E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

| Presiding: The Honorable | GEORGE H. KING, U.S. DISTRICT JUDGE |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     (In Chambers) Order re: (1) Defendants' Motion to Dismiss and (2) Request for Judicial Notice

　　Plaintiff Julie Riggs ("Plaintiff") alleges that she has suffered financial and emotional damages resulting from her interactions with the MySpace.com social networking website. On July 27, 2009, Plaintiff filed her First Amended Complaint ("FAC") against Defendants MySpace, Inc. ("MySpace"); News Corp., the parent company of MySpace; and Tom Anderson ("Anderson"), the president of MySpace (collectively, "Defendants"). Defendants have moved to dismiss each of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendants also request judicial notice of *Mora v. MySpace.com*, Case No. 07-5029 CV-SW-RED (W.D. Mo. Apr. 17, 2008), in support of their Motion to Dismiss. We have considered the papers filed in support of and opposition to this Motion, and deem this matter appropriate for resolution without oral argument.[1] L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

**I.     Background**

　　MySpace.com is a social networking website that enables its members to create personal profiles and communicate with other members. Membership on MySpace.com is free to anyone who agrees to the Terms of Use provided on the website. As a member of the MySpace community, Plaintiff had become increasingly frustrated by her encounters with other MySpace members who falsely represented themselves as celebrities on their personal profiles. Plaintiff responded by creating a profile of her own that purported to act as a filter for only verified celebrity profiles.

---

[1] On August 31, 2009, Plaintiff filed an *ex parte* motion for leave to file a response brief, in effect a sur-reply. We have considered the arguments raised in the sur-reply in deciding this Motion.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

    Plaintiff alleges nine claims against Defendants, all of which relate to the MySpace website: (1) Negligence; (2) Gross Negligence; (3) "Promissory Fraud Breach of Contract"; (4) Breach of Implied-In-Fact Contract; (5) Unjust Enrichment and Restitution; (6) a Second Count of Negligence; (7) violations of California Civil Code § 1711; (8) violations of California Civil Code § 1709; and (9) Intentional Infliction of Emotional Distress. Plaintiff has apparently premised News Corp.'s alleged liability on its ownership and control of Fox Interactive Media which, in turn, owns MySpace. (Opp'n 2).[2]

    Plaintiff's negligence claims are based on two separate instances in which MySpace deleted her MySpace celebrity profile. Plaintiff claims that as a result of the deletions she "lost irreplaceable property in the form of comments made to her by celebrities," "subjected her to public ridicule and scrutiny," and deprived her of a "social outlet." (FAC ¶ 41-43). The claim for gross negligence is based on MySpace's alleged failure to act in screening out fake profiles or adequately warning the public of their existence, evincing "a reckless and wanton disregard for the health, safety and welfare of others." (FAC ¶ 74). The claim for "promissory fraud breach of contract" is based on MySpace's alleged breach of a promise contained in the Terms of Use ("TOU") for its website that at Plaintiff's request any dispute would be settled through arbitration. (FAC ¶ 103). Plaintiff's claimed damages are based on the litigation costs incurred in prosecuting this lawsuit and the emotional distress suffered as a result.

    The claim based on violation of California Civil Code Section 1711 arises from the alleged misrepresentation of Anderson's age and location on his personal MySpace profile, thereby "willfully and purposely mislead[ing] the public" into believing he is 33 years old and lives in Santa Monica. (FAC ¶¶ 165, 173). Plaintiff believes that Anderson is 38 and lives in Los Angeles. The alleged violaton of Secion 1709 stems from a mass email sent to all MySpace members that was received by only one of Plaintiff's four MySpace accounts. The message notified MySpace users that the TOU had been amended; the new TOU did not contain an arbitration clause. (FAC ¶ 185). Although Plaintiff concedes she did receive notice of the new TOU through one of her MySpace accounts, she claims it was Defendants' "intent to deceive the Plaintiff into agreeing to the new TOU by not notifying her that they had changed." (FAC ¶ 187).

    The claims for breach of implied-in-fact contract and unjust enrichment are based on Plaintiff's allegation that MySpace misappropriated her idea for a MySpace celebrity website without compensation. Plaintiff phoned an executive at News Corp. on January 4, 2007, to discuss her proposals. She summarized her ideas to the executive's assistant and allegedly stated that she was interested in either selling her own celebrity site to MySpace, or having MySpace use the idea to create

---

    [2] In her sur-reply, Plaintiff continues to assert that News Corp. is a proper defendant to all nine claims brought against MySpace by virtue of the fact that News Corp. is a parent company of MySpace, shares executive personnel, and as a consequence is liable for the acts of its subsidiaries. However, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). Our analysis will therefore be framed in terms of Plaintiff's claims as alleged against MySpace and Anderson.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

its own celebrity site. (FAC ¶¶ 121-25). The assistant told Plaintiff that she would relay the proposals to the executive. The next day the assistant called the Plaintiff to inform her that News Corp. was not interested in purchasing either of her proposals. (FAC ¶ 129). Plaintiff proceeded to create a new celebrity site in February 2007. On November 5, 2007, Plaintiff reduced to writing the same two proposals regarding purchase of her site or the idea of a celebrity site and sent this letter to the president of News Corp., who never responded. (FAC ¶¶ 132, 134). In January 2008, MySpace launched "MySpace Celebrity," a site providing access to hundreds of official celebrity MySpace profiles. (FAC ¶ 136).

The emotional distress Plaintiff allegedly suffered as a result of the foregoing claims forms the basis for her intentional infliction of emotional distress claim against Defendants. (FAC ¶ 205).

## II.     Legal Standard

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must set forth "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

In considering a motion to dismiss, we must accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). We may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). We may also consider facts which may be judicially noticed, *Mullis v. United States Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). We need not accept as true, however, legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## III.    Discussion

### A.    *Section 230(c)(1) of the Communications Decency Act Precludes Liability for Plaintiff's Claims of Negligence and Gross Negligence*

Defendants contend that Plaintiff's claims of negligence and gross negligence are barred by Section 230(c)(1) of the Communications Decency Act ("CDA"), which broadly protects web-based service providers from liability arising out of their publication of content created by users of the service.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

*See* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."). The immunity provided under Section 230 acknowledges that "interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad venues for intellectual diversity" that have "flourished . . . with a minimum of government regulation." *Id*. at § 230(a). Under the statute, a "provider of information services" is immune from causes of action that would inherently require the court "to treat defendant as the 'publisher or speaker' of content provided by another. . . . If it does, section 230(c)(1) precludes liability." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). Section 230 immunity acts to treat internet publishers "differently from corresponding publishers in print, television and radio," precluding liability based on decisions to either publish or exclude from publication content created by a third-party. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003).

  The Ninth Circuit has construed an internet service provider's immunity under the CDA liberally, instructing that "it is immaterial whether [the publisher's] decision comes in the form of deciding what to publish in the first place or what to remove among the published material." *Barnes*, 570 F.3d at 1102 n.8. To put it simply, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008). Other courts that have addressed similar claims against MySpace have concluded that Section 230 precluded liability. *See Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 572-73 (2009) (holding that Section 230 barred claims for negligence and gross negligence against MySpace); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (same).

  Given that both claims for negligence are based on the deletion of Plaintiff's profiles, a decision by MySpace to effectively "remove content" created by Plaintiff from its website, MySpace's actions are immune from liability under Section 230(c)(1) of the CDA. Plaintiff's assertion that she is not a "third party" content provider for the purposes of the statute is belied by the plain text of Section 230, which defines an "information content provider" as "*any* person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or *any* other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis supplied). MySpace's immunity encompasses its decision to remove both the profile page created by Plaintiff, and any postings created by other MySpace members that appeared on her profile page. Similarly, Plaintiff's gross negligence claim is based on MySpace serving as a platform for user-created profiles that allegedly provide false information. In none of these scenarios has MySpace actually developed the content itself; its editorial decisions with respect to which profiles are available on its site are precisely the type of conduct immunized by the CDA.

  Moreover, MySpace's TOU explicitly reserves to MySpace the right to terminate Plaintiff's profile "at any time, for any or no reason, with or without prior notice, and without liability." (FAC, Ex. 2 at 2). Plaintiff's acceptance of the TOU was a condition to creating her MySpace profiles; she did not

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

gain the right to maintain those profiles indefinitely, or even absent "good cause."[3]  The district court order that is the subject of Defendants' request for judicial notice came to the same conclusion.  *See Mora v. MySpace.com*, Case No. 07-5029 CV-SW-RED (W.D. Mo. Apr. 17, 2008) (dismissing plaintiff's claim, noting that the "Terms of Service actually state that MySpace may terminate Mr. Mora's account at any time and for any reason").[4]

As Plaintiff's claims for negligence and gross negligence are precluded by the CDA as well as MySpace's TOU,  Defendants' Motion is **GRANTED** as to claims 1, 2, and 6.

### B. *Plaintiff's "Promissory Fraud Breach of Contract" Claim Is Without Merit Whether Analyzed as Promissory Fraud or Breach of Contract*

Plaintiff's third claim, based on MySpace's alleged breach of an arbitration clause in the site's TOU, is an amalgam of two distinct theories, and fails whether viewed as a claim for promissory fraud and/or breach of contract.

In a promissory fraud action, "the *essence* of the fraud is the existence of an intent at the time of the promise not to perform it." *Benson v. Hamilton*, 126 Cal. App. 331, 334 (1932).  Thus, "'in order to support a claim of fraud based upon the alleged failure to perform a promise, it must be shown that the promisor did not intend to perform at the time the promise was made.'" *Conrad v. Bank of America,* 45 Cal. App. 4th 133, 157 (1996) (quoting *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985)).  However, Plaintiff relies on conclusory arguments to establish this element, baldly asserting that MySpace "wanted Members to rely on their misrepresentation, but they knew all along they weren't going to keep their promise if anyone filed an arbitration demand."  (FAC ¶ 110).  Interestingly, the same TOU that MySpace allegedly intended to induce reliance among members specifically warns those members that "MySpace.com may modify this Agreement from time to time and such modification shall be effective upon posting by MySpace.com on the MySpace Website. You agree to be bound to any changes to this Agreement when you use the MySpace Services after any such modification is posted.  It is therefore important that you review this Agreement regularly to ensure you are updated as to any changes." (FAC, Ex. 2, at 1).

Plaintiff's assertion concerning MySpace's intent not to perform the alleged promise to arbitrate, made to each of its 70 million members, is categorical. Yet Plaintiff notably does not allege that

---

[3] In direct conflict with the plain language of the agreement, Plaintiff asks us to interpret the TOU to require MySpace to have "good cause" before terminating any membership. (Opp'n 5).

[4] The district court order in *Mora* is a proper subject of judicial notice under Federal Rule of Evidence 201(d). *See* FED. R. EVID. 201(d) ("A court shall take judicial notice if requested by a party and supplied with the necessary information.").  The order provided to the Court is one of public record, and therefore "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).  Accordingly,  Defendants' request for judicial notice is **GRANTED**.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | | Date | September 17, 2009 |
|---|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | | |

MySpace has failed to ever arbitrate a member dispute. While we acknowledge Plaintiff's preference to have resolved this matter in arbitration, "[t]he mere failure to perform a promise made in good faith does not constitute fraud." *Merciful Saviour v. Volunteers of America, Inc.*, 184 Cal. App. 2d 851, 859 (1960). Plaintiff's otherwise conclusory allegations that at the time MySpace promised to arbitrate it had no intention of doing so are insufficient to overcome Defendants' Motion to Dismiss. In order to meet the threshold of plausibility, Plaintiff must make non-conclusory allegations sufficient to raise an inference of such intent on behalf of MySpace. She has failed to do so.

Moreover, whether the claim is for promissory fraud or breach of contract, it must allege legally cognizable damages. *See Furia v. Helm*, 111 Cal. App. 4th 945, 956 (2003) ("[F]raud without damage is not actionable."); *Regan Roofing Co. v. Superior Court*, 24 Cal. App. 4th 425, 434-35 (1994) (plaintiff must show damages from the alleged breach of contract). Here, Plaintiff has failed to allege any such damages. Plaintiff's only alleged damages are not cognizable under either theory of this claim because they consist entirely of the expenses she has incurred in bringing this suit against Defendants and her emotional distress.

Plaintiff solely relies on *Simon v. San Paolo U.S. Holding Co.*, 35 Cal. 4th 1159 (2005), to support her request for her litigation expenses. In *Simon*, Plaintiff argues, the jury awarded the plaintiff bringing a promissory fraud claim $5,000, which represented the out-of-pocket loss in retaining an attorney. (Opp'n 9-10). However, the promissory fraud at issue in *Simon* related to the purchase of a piece of real estate; plaintiff's reliance "led him, as the jury indeed found, to spend $5,000 to retain an attorney in anticipation of opening escrow." *Simon*, 35 Cal. 4th at 1175. Therefore the money was spent in reliance of the promise made by defendant. In contrast, Plaintiff alleges no damages flowing from Defendants' conduct. Instead, she seeks to recover the costs of litigating the promissory fraud claim (or, alternatively, the breach of contract claim) itself. Attorneys' fees and litigation costs are not correctly characterized as "damages." Nor does Plaintiff contend that attorneys' fees are specifically provided for in an agreement between the parties. *See Navellier v. Sletten*, 106 Cal. App. 4th 763, 777 (2003) (noting "the prevailing rule that such fees and costs are not recoverable in an action for breach of a release unless the agreement or a statute specifically provides for them").

Similarly, under either a fraud or contract theory, Plaintiff cannot recover damages for her alleged emotional distress. On a fraud claim, damages solely for emotional distress, independent of other legally cognizable damages, are not recoverable. *Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1269 (1989) (holding in a fraud case that "damages for emotional distress alone are not recoverable," and are "allowed only as an aggravation of other damages"). Likewise, "damages for mental suffering and emotional distress are generally not recoverable in an action for breach of an ordinary commercial contract in California" unless the nature of the contract or the breach made "serious emotional disturbance [] a particularly likely result." *Ehrlich v. Menezes*, 21 Cal. 4th 543, 558 (1999) (citation omitted); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) ("Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at the time; consequential damages beyond the expectations of the parties are not recoverable."). Plaintiff has not pled that serious emotional distress was a particularly likely result of MySpace declining "to use the less expensive and faster remedy of arbitration," (FAC ¶ 105), nor under the circumstances would such an allegation be

Case 2:09-cv-03073-GHK-CT  Document 66  Filed 09/17/2009  Page 7 of 12

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

plausible. *See Mercado v. Leong*, 43 Cal. App. 4th 317, 324 (1996) (damages for serious emotional distress "are unlikely when the interests affected are merely economic").

Due to Plaintiff's inability to allege that cognizable damages resulted from any alleged fraud or breach of contract, Defendants' Motion to Dismiss is **GRANTED** as to claim 3.

C.  *Plaintiff's Implied-in-Fact Contract Claim Fails*

Although the law does not recognize a protectible property interest in an abstract idea, it may be subject to protection as between two contracting parties. Under California law, to establish breach of an implied-in-fact contract for disclosure of an idea, a plaintiff must show that she "prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004). Even in the absence of an express promise to pay, a contract may be implied in fact where "the circumstances preceding and attending disclosure, together with the conduct of the offeree acting with knowledge of the circumstances, show a promise . . . ." *Desny v. Wilder*, 46 Cal. 2d 715, 738 (1956). However, "[i]f disclosure occurs before it is known that compensation is a condition of its use, . . . no contract will be implied." *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 902 (9th Cir. 1987) (internal quotations omitted).

Although Plaintiff makes the conclusory and speculative statement that the assistant to whom Plaintiff revealed her idea "knew Plaintiff's idea was being offered for sale before [the assistant] asked Plaintiff to summarize the idea," (Opp'n 11), she makes no allegation of how the assistant came into possession of this knowledge. While an implied-in-fact contract may be manifested by the parties' conduct "in light of the surrounding circumstances [and] their tacit understanding," Plaintiff does not allege any course of conduct that would provide a foundation for such tacit understanding. *Moreno v. Los Angeles Child Care and Dev. Council, Inc.*, 963 F. Supp. 876, 879 (C.D. Cal. 1997). Nor does she allege prior dealings between herself and the News Corp. executive, whom she cold-called, that would suggest a prior mutual understanding as to Plaintiff's expected compensation.

Plaintiff cites MySpace's openness to new ideas from its members, yet she does not allege any accompanying acts or statements made by the company that would indicate a willingness to compensate members for sharing those ideas. Nor does she allege that MySpace has a *de facto* practice of paying its members for use of ideas that improve users' experience on the website.

In contrast, many of the foundational cases in this area where courts have been willing to find an implied-in-fact contract involve the submission of a screenplay or pilot to a producer, where industry custom supports an inference that the writer would be compensated if his idea were used by the producer. *See, e.g.*, *Minniear v. Tors*, 266 Cal. App. 2d 495, 504 (1968) ("[Defendant] admitted that pilots are made in the industry for the purpose of showing them to prospective purchasers with a view to selling them commercially to make a series. The jury could infer that [Defendant] was more than a social guest at the showing of the pilot; that he accepted the showing and offer of the synopsis with full knowledge of the conditions and circumstances of disclosure."); *Chandler v. Roach*, 156 Cal. App. 2d

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

435, 441 (1957) (finding implied-in-fact contract for a producer's use of an idea given "the circumstances, a part of which is that it is reasonably understood that a professional author expects payment of the reasonable value of the idea or the material").

     Also notably absent from Plaintiff's FAC is any allegation that, before she was asked to summarize her ideas, Plaintiff explicitly or implicitly told the assistant that her ideas came at a price and were not of the gratuitous type solicited from MySpace members. When the assistant asked if she could be of any help to Plaintiff, as the executive was unavailable, Plaintiff stated that she wanted to discuss her proposals with the News Corp. executive. Plaintiff first described her own site for verified celebrity profiles, explaining "that she created the [celebrity] site to help separate the real celebrities from the celebrity impersonators," and detailing "some of her verification methods." (FAC ¶¶ 123-24). It was at this point that "Plaintiff stated that she was interesting [*sic*] in selling [Plaintiff's own celebrity site] to MySpace for it to take over after she created it." (FAC ¶ 124). *See Aliotti*, 831 F.2d at 902-03 (contract not implied where plaintiff showed her designs to defendant, hoping defendant would hire her to acquire her designs; there was no discussion about defendant purchasing the designs until after the designs had been displayed). Plaintiff then discussed the idea of MySpace creating a celebrity site of its own, highlighting the benefits to MySpace and members alike. Plaintiff does not allege that she prefaced disclosure of this idea with any condition that she be paid. At that, the conversation ended. (FAC ¶¶ 125-27). Even under Plaintiff's recounting of her interaction with the assistant, Plaintiff appears to embody "[t]he idea man who blurts out his idea without having first made his bargain [and thus] has no one but himself to blame for the loss of his bargaining power. The law will not in any event, from demands stated subsequent to the unconditioned disclosure of an abstract idea, imply a promise to pay for the idea, for its use, or for its previous disclosure." *Desny*, 46 Cal. 2d at 739.[5]

     In November 2007, Plaintiff summarized her ideas, as well as her expectation of compensation, in a letter to the president of MySpace—yet this was months after the initial disclosure and therefore of no relevance in determining whether an implied-in-fact contract existed at that point. (FAC ¶ 132). Finally, Plaintiff attempts to tie up the loose ends of her claim by pointing to the fact that MySpace ultimately did develop a celebrity site. However, MySpace's subsequent actions cannot be used to infer a prior agreement between the parties: "The law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue." *Desny*, 46 Cal. 2d at 739. Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to claim 4.

     **D.**    ***Plaintiff's Claim for Unjust Enrichment is Preempted, and Is Not Otherwise Cognizable Under California Law***

---

[5] We note, too, that Plaintiff's original Complaint describes her conversation with the assistant without ever mentioning the subject of compensation, even as an afterthought. (*See* Compl. ¶¶ 106-108).

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

Defendants offer two bases for dismissal of Plaintiff's claim of unjust enrichment for use of her idea. First, Defendants move to dismiss the claim on the basis that it is preempted by the Copyright Act. Second, Defendants contend Plaintiff cannot base recovery for use of an idea on an unjust enrichment theory.

### 1.   Preemption of State Law Claims by the Copyright Act

The Copyright Act preempts a state law claim when (1) the work at issue comes within the subject matter of the copyright; and (2) the rights granted under state law are equivalent to those protected by the Act. *See Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987), *overruling on other grounds recognized by Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001). With respect to the second step of the analysis, "[c]ourts have generally held that the unjust enrichment theory creates rights that are essentially equivalent to those created under federal copyright law." *Lennon v. Seaman*, 63 F. Supp. 2d 428, 436 (S.D.N.Y. 1999).

In order to satisfy the first prong of the preemption test, Defendants cite to *Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*, No. CV 03-5834-GHK, 2005 WL 4715213 (C.D. Cal. Apr. 28, 2005), to stand for the proposition that although Plaintiff's "idea" is technically "excluded from coverage of the Copyright Act, [it] nevertheless fall[s] within the Act's 'subject matter.'" (Mot. 17). Defendants' reliance on the reasoning of this case is misplaced. *Celestial Mechanix*, and those with similar reasoning, involve the unauthorized use of an idea that had been embodied in a tangible medium and was thus protected by the Act. *See Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1058 (C.D. Cal. 2000) ("ideas embodied in a work covered by the [Act] are nevertheless within the subject matter of copyright for purposes of preemption").

In this case, there are two different disclosures at issue: the telephonic disclosure made in January 2007, and the written disclosure made in November 2007. Section 301 of the Copyright Act describes the extent to which the Act preempts state claims:

> (a) [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether . . . published or unpublished, are governed exclusively by this title. [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

The Copyright Act does not preempt those ideas that are not "fixed in a tangible medium of expression." To the extent that Defendants are challenging the first oral disclosure on the basis of preemption, their argument fails.

Any claim arising from the second, written disclosure, however, is properly precluded on the basis of preemption. Plaintiff's letter, which reduced to writing her idea for a celebrity website, clearly falls within the scope of the Act, and as "Plaintiff's claim as expressed in [her] complaint is based solely on Defendant[s'] unauthorized use of [her] ideas without compensation . . . . the claim is preempted by the Copyright Act." *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1160 (C.D. Cal. 2001); *see also Fischer v. Viacom Int'l, Inc. and MTV Networks, Inc.*, 115 F. Supp. 2d 535, 542 (D. Md. 2000) (concluding that because "the gravamen of [plaintiff's] claim is that MTVN took his ideas and used

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

them without proper compensation", the "rights protected by the implied contract are equivalent to the exclusive rights protected by the Copyright Act.").

    **2.  Plaintiff Does Not Have a Protectible Property Interest in an Abstract Idea**

  Although a claim based on Plaintiff's alleged oral disclosure is not preempted, she has nonetheless failed to state a claim for unjust enrichment. California does not afford "individual property type protection to abstract ideas," and Plaintiff cannot show that Defendants' use of the idea breached either an express or implied-in-fact contract. *See Blaustein v. Burton*, 9 Cal. App. 3d 161, 182 (1970) ("the idea purveyor cannot prevail in an action to recover compensation for an abstract idea unless (a) before or after disclosure he has obtained an express promise to pay, or (b) the circumstances preceding and attending disclosure, together with the conduct of the offeree acting with knowledge of the circumstances, show a promise of the type usually referred to as 'implied' or 'implied-in-fact.'").

  Defendants' Motion to Dismiss is therefore **GRANTED** as to claim 5.

  *E.  Plaintiff's Claim for Intentional Misrepresentation Fails for Lack of Reliance and/or Cognizable Damages*

  In her FAC, Plaintiff sought damages for Anderson's alleged misrepresentation of his age and location on his MySpace profile under California Civil Code section 1711. (FAC ¶¶ 165, 173). Plaintiff also alleged a claim under Section 1709 based on a mass email sent to all MySpace members notifying them that the TOU had been amended; the new TOU did not contain an arbitration clause. Plaintiff states that she only received the email at one of her four MySpace accounts, showing "Defendants' intent was to deceive the Plaintiff into agreeing to the new TOU by not notifying her that they had changed." (FAC ¶ 187). Because Sections 1711 and 1709 do not provide substantive causes of action for fraud, Plaintiff has abandoned reliance on these claims, (*see* Opp'n 15), and has furthermore conceded that she has not suffered any damages from Anderson's alleged age misrepresentation. (*See* Sur-Reply 5). However, she has indicated her intent to pursue a claim for intentional misrepresentation regarding Anderson's location, and to include as damages in her intentional infliction of emotional distress claim the distress suffered as a result of Defendants' "deliberate scheme . . . to deprive the Plaintiff of her legal rights." (*Id*. at 5, 10).

  Under California law, to establish a claim for intentional misrepresentation, "the plaintiff must prove seven essential elements: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it . . .; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff *reasonably relied on the representation*; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." *Manderville v. PCG & S Group, Inc*., 146 Cal. App. 4th 1486, 1498 (2007) (italics in original). Even if Plaintiff were granted leave to amend her complaint for a second time, she has not alleged the discovery

Case 2:09-cv-03073-GHK-CT    Document 66    Filed 09/17/2009    Page 11 of 12

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

of any new facts, and has not suggested any way in which a fraud claim could be repled to allege reasonable reliance on the alleged misrepresentation, or cognizable damages resulting from it.

Plaintiff alleges that Anderson's MySpace profile misrepresented his location as "Santa Monica." Plaintiff believes Anderson's actual location is "Los Angeles." Anderson's profile did not provide any further details on his location, such as a street address. Nonetheless, Plaintiff alleges that she relied on Anderson's profile in addressing service of process to him in connection with this case, citing $73.45 for Fed-Ex and process server charges as damages. (FAC ¶ 174). As previously discussed, Plaintiff's litigation costs are not recoverable as damages. Furthermore, because there was no actual address given, Plaintiff could not have actually relied on Anderson's MySpace profile in serving him. In any event, if Plaintiff relied solely on the city listed on Anderson's profile, created for social purposes and viewable by millions of MySpace members, such reliance was not reasonable. *See Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) ("[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts."). We also note that if Anderson's profile had not contained the alleged misrepresentation, and instead had listed his city as "Los Angeles," Plaintiff would not have been any more successful in serving him at such a generalized location.

Since Plaintiff is unable to establish a claim for intentional misrepresentation, claims seven and eight are **DISMISSED**.

### F.     Plaintiff's Intentional Infliction of Emotional Distress Claim Is Without Merit

A claim for intentional infliction of emotional distress ("IIED") exists where there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. The plaintiff must show "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id*. at 1004.

Plaintiff's claim for IIED in this case is premised on the conduct alleged in the preceding eight counts; she does not cite to any independent actions that have contributed to her alleged emotional distress. She has only superficially pled the elements of a proper IIED claim. For instance, she asserts that "Defendants' actions against Plaintiff were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and are utterly intolerable in a civilized society." (FAC ¶ 207). Plaintiff notes that Defendants are in a position of power over her, and knew that if they refused to arbitrate her dispute she would be forced to file a lawsuit. (FAC ¶ 213-14). Even accepting Plaintiff's allegations as true, such conduct falls far short of that which is so "outrageous" that it "exceeds all bounds of that usually tolerated in a civilized community."

Furthermore, Plaintiff's mere statements that she has suffered emotional distress in the form of anxiety and headaches do not comprise the type of emotional distress of such a "substantial quality" that

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03073-GHK (CTx) | Date | September 17, 2009 |
|---|---|---|---|
| Title | *Julie C. Riggs v. MySpace, Inc., et al.* | | |

no reasonable person in a "civilized society should be expected to endure it." Plaintiff claims that when her celebrity profile was deleted from MySpace, she "felt humiliated, embarrassed, very upset and became anxious causing her enormous stress." (FAC ¶ 40). She also alleges that the same night her profile was deleted she began to suffer insomnia, and a recurrence of migraine headaches. (FAC ¶ 44-45). *See Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (noting the "high bar" set for showing severe emotional distress, and finding that discomfort, worry, anxiety, upset stomach, concern, and agitation fall below that bar).

In sum, Plaintiff has failed to establish a claim for intentional infliction of emotional distress, as the alleged conduct is neither extreme nor outrageous, and Plaintiff has not suffered extreme emotional distress. Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to claim 9.

**IV.    Conclusion**

For the reasons stated above, Plaintiff's First Amended Complaint is hereby **DISMISSED** without further leave to amend. Claims 1, 2 and 6 are not amenable to amendment because they are barred as a matter of law by Section 230(c)(1) of the Communications Decency Act. Plaintiff's claim 3 fails as a matter of law because there was no reasonable reliance or cognizable damages. Plaintiff's claim 4 is not amenable to further amendment because despite prior amendment, it is clear that she can make no allegations that will satisfy the essential elements of a claim for breach of implied-in-fact contract. Plaintiff's claim 5 is in part preempted by the Copyright Act, and to the extent that it is not, it is not cognizable under California law. Plaintiff has abandoned reliance on her claims 7 and 8, recognizing that neither states a substantive claim for fraud. Moreover, any amendment is futile because Plaintiff cannot allege any reasonable reliance or cognizable damages. Finally, Plaintiff's claim 9 fails as a matter of law. Accordingly, this action is hereby **DISMISSED WITH PREJUDICE** and **WITHOUT FURTHER LEAVE TO AMEND.**

**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
|  | Initials of Deputy Clerk | | Bea |